**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| ROEE KIVITI and ADIEL KIVITI, individually, and on behalf of their minor child, K.R.K., <br><br>     4610 Morgan Drive <br>     Chevy Chase, MD 20815 <br>     (Montgomery County), <br><br>         *Plaintiffs*, <br><br> v. <br><br> MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, <br><br>     2201 C Street NW <br>     Washington, DC 20520, <br><br>         *Defendants*. | Civil Action No. 19-2665 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.    PRELIMINARY STATEMENT

1.    Plaintiff K.R.K. is the infant daughter of two married U.S. citizens, Plaintiffs Roee Kiviti and Adiel Kiviti.  In almost all cases, the U.S. government will recognize a child born to two married U.S. citizens as a citizen at birth.  But not K.R.K.  Because she is the child of two men who are married to each other, the U.S. Department of State ignored her parents' marriage, evaluated K.R.K.'s citizenship under the standards only applicable to children "born out of wedlock," and ultimately refused to recognize K.R.K.'s U.S. citizenship.  The State Department's policy of treating children born to married same-sex couples as if one of their legal parents were a stranger is wrong and hurts families.  It is also unlawful.  The State Department's unjust policies

and practices should be enjoined because they violate the Immigration and Nationalization Act ("INA"), unconstitutionally disregard the dignity and equality of the marriages of same-sex couples, and unlawfully discriminate against children simply because their married parents are a same-sex couple.

2.      Roee and Adiel are K.R.K.'s parents.  They brought her into the world via gestational surrogacy using Adiel's sperm and a donated egg.  K.R.K. was born in 2019 in Canada. K.R.K.'s Canadian birth certificate correctly identifies Roee and Adiel—and only them—as her parents.

3.      K.R.K. qualifies as a U.S. citizen at birth pursuant to Section 301(c) of the INA, codified at 8 U.S.C. § 1401(c).  Under that provision, a person born outside the United States to two married U.S. citizens, at least one of whom has resided in the United States at any time, is a national and citizen of the United States at birth.  Because she is the child of two married U.S. citizens who both resided in the United States prior to her birth, K.R.K. has been a United States citizen since birth.

4.      The State Department, however, has wrongly refused to recognize K.R.K.'s U.S. citizenship.  State Department officials refused to consider K.R.K.'s citizenship under Section 301(c).  Instead, the State Department erroneously applied two sets of more stringent requirements: (i) Section 309 of the INA, codified at 8 U.S.C. § 1409, which applies only to the children of unmarried parents; and (ii) Section 301(g), which applies only if one of the parents is a noncitizen. In doing so, State Department officials failed to acknowledge the validity of Roee and Adiel's marriage, deemed K.R.K. to have been "born out of wedlock," and treated Roee as if he were not K.R.K.'s parent.

5.     This was not an aberration or the unsanctioned conduct of a single State Department employee.  To the contrary, it is State Department policy to disregard the relationship between a child and his or her non-biological parent—a policy that leads the State Department to *routinely* refuse to recognize the lawful marriages of same-sex couples and classify their children as non-marital children.  However, a similarly situated different-sex couple and their baby would not have been treated the same way.

6.     Pursuant to agency policy, the State Department applied the requirements of Sections 309 and 301(g) that govern when an unwed father has a child with a noncitizen.  It then determined that K.R.K. is not a U.S. citizen because her U.S.-citizen biological parent, Adiel, had not lived in the United States long enough to meet Section 301(g)'s five-year residency requirement.   This was wrong, discriminatory, and a violation of Plaintiffs' statutory and constitutional rights.

7.     The State Department's unlawful policy also puts the Kiviti family at real risk. The State Department has denied K.R.K. the rights and privileges of U.S. citizenship, including most urgently the right to reside permanently in the United States with her U.S.-citizen parents and her U.S.-citizen older brother L.R.K.

8.     The State Department's policy stigmatizes and demeans the Kiviti family by refusing to recognize and give effect to Roee and Adiel's marriage, denying the reality of the father-daughter relationship between an infant and both of her fathers, labeling K.R.K. a non-marital child, and singling the family out for government-sponsored discrimination.   State Department policy unlawfully denies that the Kiviti family is a family at all.

9.     Plaintiffs seek a declaration that K.R.K. has been a U.S. citizen since birth, an order instructing the State Department to issue her a passport immediately, and declaratory and

injunctive relief prohibiting the State Department from discriminating against same-sex couples and their children in violation of the INA and the United States Constitution.

## II.    THE PARTIES

10.    Plaintiff Roee Kiviti is a U.S. citizen who was born in Israel in 1978.  He has lawfully resided in the United States since 1982 and was raised primarily in southern California. Roee became a lawful permanent resident in September 1993 and became a U.S. citizen in August 2001.

11.    Plaintiff Adiel Kiviti is a U.S. citizen who was born in Israel in 1979.  Adiel's application to be a lawful permanent resident was approved in April 2015, and Adiel moved to the United States in May 2015. Adiel became a U.S. citizen in January 2019.

12.    Roee and Adiel married on October 15, 2013, in Santa Barbara, California.

13.    Plaintiff K.R.K. is the daughter of Roee and Adiel Kiviti.  K.R.K. was born in 2019 in Calgary, Canada, during Roee and Adiel's marriage.  Both Adiel and Roee were U.S. citizens at the time of K.R.K.'s birth.

14.    Roee and Adiel live in Chevy Chase, Maryland (Montgomery County) with K.R.K. and their son L.R.K.

15.    Defendant Michael R. Pompeo is named in his official capacity as Secretary of State.  Defendant Pompeo is the head of the U.S. Department of State and responsible for setting and overseeing implementation of the policies and procedures employed by the agency and all its various subdivisions.  Under Section 104(a) of the INA, the Secretary of State is "charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to . . . the determination of nationality of a person not in the United States."  8 U.S.C. § 1101(a).  Defendant Pompeo's address is Department of State, 2201 C Street NW, Washington, DC 20520.

16.     Defendant, the U.S. Department of State, is an agency of the U.S. government that is responsible for, among other things, the issuance of U.S. passports to U.S. citizens and "protect[ing] the integrity of the U.S. passport as proof of U.S. citizenship at home and around the world."  *See*  About  Us – U.S.  Passports,  https://travel.state.gov/content/travel/en/about-us/passports.html (last visited Sept. 11, 2019).  The State Department's address is 2201 C Street NW, Washington, DC 20520.

## III.   JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 8 U.S.C. § 1503(a) (*de novo* proceedings for declaration of United States nationality), and 28 U.S.C. §§ 2201-2202 (declaratory judgment).  This Court also has jurisdiction to review final agency action pursuant to 5 U.S.C. § 702 (Administrative Procedure Act).

18.     Venue is proper in the District of Maryland under 28 U.S.C. § 1391(e)(1)(C) and 8 U.S.C. § 1503(a) because Plaintiffs reside in this District.

## IV.   THE STATUTORY SCHEME: BIRTHRIGHT CITIZENSHIP UNDER THE INA

19.     Citizenship in the United States can be acquired through birth or naturalization. Pursuant to the "Citizenship Clause" of the Fourteenth Amendment, citizenship is acquired at birth by being born in the United States.  Persons born outside the United States acquire citizenship at birth only as provided by the INA.  Persons who do not acquire citizenship at birth may acquire citizenship only through naturalization.

20.     Section 301 of the INA sets out the categories of persons who "shall be nationals and citizens of the United States at birth."  Section 301 has long been recognized as applicable to all persons whose parents were lawfully married when they were born.

21.     As relevant here, under Section 301(c), a baby born abroad to married parents is a U.S. citizen at birth when both parents are U.S. citizens and one of them has resided in the United States at any point prior to the baby's birth. *See* 8 U.S.C. § 1401(c) (providing for the citizenship at birth of "a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person").

22.     Section 301 does not require a biological relationship between the child and both of his or her married parents. The INA does not expressly define "parents" or "born . . . of parents" as those terms are used in Section 301. Rather, it incorporates the fundamental common law principle that a child born to married parents is presumed to be a marital child. *See Jaen v. Sessions*, 899 F.3d 182, 186 (2d Cir. 2018) (under Section 301, "a child born into a lawful marriage is the lawful child of those parents, regardless of the existence or nonexistence of any biological link"); *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1093 (9th Cir. 2005) (the INA does "not require a blood relationship for citizenship, other than the requirement under [8 U.S.C.] § 1409 applicable only to children born out of wedlock"); *Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000) ("A straightforward reading of [8 U.S.C.] § 1401 indicates, however, that there is no requirement of a blood relationship."); *Dvash-Banks v. Pompeo*, No. 18-523, 2019 WL 911799, at * 7 (C.D. Cal. Feb. 21, 2019) ("Section 301 does not require a person born during their parents' marriage to demonstrate a biological relationship with both of their married parents"), appeal docketed May 7, 2019, No. 19-55577 (9th Cir.).

23.     In contrast to Section 301, Section 309 sets forth very different requirements for a child "born out of wedlock" to be a citizen at birth. The child of an unwed father is a U.S. citizen at birth only if he or she can satisfy the several requirements of Section 309(a) and, as applicable,

the additional requirements of Section 301(c), (d), (e) or (g).  The first requirement of Section 309(a) is that "a blood relationship between the person and the father is established by clear and convincing evidence."  8 U.S.C. § 1401(a)(1).

24.     For a baby born abroad to an unwed U.S. citizen parent and a noncitizen parent, Section 309 also requires the child to meet the requirement of Section 301(g) that the citizen parent was physically present in the United States for at least five years prior to the baby's birth (at least two of which must be after the parent reached the age of fourteen).

## V.     THE STATE DEPARTMENT'S SYSTEMATIC MISCLASSIFICATION OF CHILDREN BORN TO MARRIED SAME-SEX COUPLES AS "BORN OUT OF WEDLOCK"

25.     Chapter 8 of the State Department's Foreign Affairs Manual ("FAM") is titled "Passports and Consular Reports of Birth Abroad," and sets out State Department policy concerning the citizenship at birth of a person born outside the United States.

26.     The State Department describes the FAM and the associated Foreign Affairs Handbooks ("FAHs") as:

> a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies.  The FAM (generally policy) and the FAHs (generally procedures) together convey codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates.

*See* fam.state.gov (last visited July 22, 2019).

27.     The FAM sets out State Department policies and procedures, but is not the product of notice-and-comment rulemaking, congressional action, or formal adjudication.

28.     Section 301 of the INA—unlike Section 309—does not require a biological or "blood relationship" between a child and both of his or her parents.  Contrary to the plain language

of the statute, however, the State Department has adopted a policy of requiring a "biological" relationship between both married parents and their child in order for the child's eligibility for citizenship to be evaluated under Section 301. In particular, the FAM defines being born "in wedlock" to mean that "the child's biological parents were married to each other at the time of the birth of the child." 8 FAM § 304.1-2.

29.     In keeping with this definition, it is State Department policy to evaluate whether a child is a U.S. citizen under Section 301 only if the child has a "biological" relationship with both married parents and under Section 309 if the child does not have a "biological" relationship with both married parents. The State Department deems a man to have a "biological" relationship with his child only if he is the child's genetic father. 8 FAM § 301.4-1(D)(1)(c).

30.     While it is the State Department's stated policy that "[c]hildren born in wedlock are generally presumed to be the issue of that marriage," 8 FAM § 301.4-1(D)(1)(d), in practice, only the children of different-sex couples benefit from that presumption. Under its discriminatory policies and practices, the State Department refuses to apply this established presumption to the children of married same-sex couples.

31.     The State Department does not generally require specific evidence documenting a biological relationship between parents and their children. Rather, State Department policy expressly leaves it up to the subjective judgment of consular officials to determine whether and when "doubt arises that the U.S. citizen 'parent' is biologically related to the child." 8 FAM § 301.4-1(D)(1)(d).

32.     On information and belief, State Department officials are highly unlikely to ask different-sex parents who are identified as legal parents (e.g., on a child's birth certificate) if their child is, in fact, biologically related to both legal parents. In contrast, under the State Department's

policies and practices, same-sex parents will always trigger an investigation, and consular officials routinely ask same-sex parents for specific evidence of a biological tie and/or about the use of assisted reproductive technology.

33.     On information and belief, the children of married different-sex parents are not routinely classified as non-marital children and subjected to the citizenship requirements of Section 309, even when those children are not, in fact, biologically related to both parents.

34.     The State Department's policy of requiring a "biological" relationship between a child and both of his or her married parents misclassifies children born to married same-sex couples as "born out of wedlock."  This policy categorically excludes the children of same-sex couples from the marital presumption embodied in Section 301.  The State Department thus disregards the parents' valid marriages, ignores the legal and parental rights of non-biological parents, demeans the relationship between the child and his or her non-biological parent, and destabilizes families.  It also disenfranchises U.S. citizen children of birthright citizenship.

## VI.     CONSTITUTIONAL RIGHTS OF SAME-SEX COUPLES AND THEIR CHILDREN

35.     As the Supreme Court has recognized, excluding same-sex couples and their children from the rights and protections associated with marriage is unconstitutional.  The Court's precedents make clear that the constitutional guarantees of liberty and equality protect same-sex couples as they make choices central to individual dignity and autonomy, including the choice of an intimate life partner, the choice to marry, and the choice to bring children into their family.

36.     In *United States v. Windsor*, 570 U.S. 744 (2013), the Supreme Court recognized that withholding spousal protections from married same-sex couples violated their equal protection and due process rights as guaranteed by the Fifth Amendment.  The Constitution mandates that the federal government respect the equal dignity of the marriages of same-sex couples and extend to

them equal treatment and recognition across the full range of federal programs and protections.  In addition to infringing the constitutional rights of adults, denying federal marital protections to the families formed by same-sex couples humiliates their children, "mak[ing] it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Id.*, 570 U.S. at 772.

37.     In *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), the Supreme Court struck down state laws barring same-sex couples from marrying and having their marriages equally recognized because such laws violated their equal protection and due process rights as guaranteed by the Fourteenth Amendment.  Embodied within these rights are protections for choices central to self-definition about marriage, intimacy, association, and family integrity. *Id.*, 135 S. Ct. at 2599-2601.  Excluding same-sex couples from marriage and the attendant protections not only harms the couples, but also hurts and humiliates their children, denying them "the recognition, stability, and predictability marriage offers," and subjecting children to "the stigma of knowing their families are somehow lesser." *Id.* at 2600.

38.     In *Pavan v. Smith*, 137 S. Ct. 2075 (2017), the Court reiterated that married same-sex couples must receive the same "constellation of benefits . . . linked to marriage," as married different-sex couples.  Those benefits include the right to be recognized as the parents of a child born during their marriage on the same terms as married different-sex couples, regardless of whether only one of the parents has a biological connection to the child.

39.     Same-sex spouses and their children are also equally protected in their rights to family privacy, integrity, and association.  Decisions about whether and how to bring children into a family, choices about how to raise them, and the right to secure parent-child relationships are fundamental and constitutionally protected.

## VII.   THE KIVITI FAMILY

40.     Roee and Adiel met in Israel in 2009, and began dating in 2011.

41.     Before they met, Roee and Adiel both knew that they wanted to have children, and when they got engaged they did so with the hope and understanding that children would be part of their future together.  Roee and Adiel married on October 15, 2013 in Santa Barbara, California.

42.     When Roee and Adiel decided to form their family, they decided to use assisted reproductive technology ("ART") to bring children into the world.  The couple moved forward with a Canadian volunteer gestational surrogate, and eggs provided by a separate donor.

43.     Roee and Adiel's son L.R.K. was born in Alberta, Canada in 2016.  A Canadian court issued an order finding that Roee and L.R.K. have a biological and genetic relationship, and that both Roee and Adiel are his parents.  L.R.K.'s Alberta birth certificate correctly identifies Roee and Adiel as his parents.

44.     Two weeks after their son's birth, the family returned to the United States, with L.R.K. entering the country on a Canadian passport.  In January 2017, Roee and Adiel applied for a U.S. passport for their son at the State Department's Washington Passport Agency in Washington, D.C.  In addition to the required application form, the Kivitis provided the agency with L.R.K.'s birth certificate identifying Roee and Adiel as his parents, Roee and Adiel's marriage certificate, Roee's U.S. passport, and Roee's naturalization certificate.  State Department employees did not ask about a biological relationship between L.R.K. and either of his fathers.  The Passport Agency approved the application, and properly issued L.R.K. a U.S. passport.

45.     Roee and Adiel hoped to give their son a younger sibling.  As they had done for their son, Roee and Adiel decided to move forward with a Canadian volunteer gestational surrogate and eggs provided by a donor.  Once again, all parties agreed that Roee and Adiel would be the intended and only parents of any child born via surrogacy.

46.     Roee and Adiel's daughter K.R.K. was born in Calgary, Canada in 2019.

47.     On February 28, 2019, the Court of Queen's Bench of Alberta issued a Surrogacy Order in which the court found that "the genetic and biological relationship between Adiel Yoel Kiviti and" K.R.K. had been "established." The court further ordered that both Adiel and Roee are K.R.K.'s only parents.[1]

48.     On March 6, 2019, the Alberta Registrar of Vital Statistics issued K.R.K.'s birth certificate, which identifies Roee and Adiel as K.R.K.'s parents.

49.     Roee and Adiel returned to the United States with K.R.K. three weeks after her birth, with K.R.K. entering the country on a Canadian passport. Following the same approach they had taken to obtain their son's passport, on May 1, 2019, Roee and Adiel went with K.R.K. to the Los Angeles Passport Agency to apply for a U.S. passport. The Kivitis submitted the application, K.R.K.'s birth certificate identifying Roee and Adiel as her parents, Roee and Adiel's marriage certificate, Adiel's U.S. passport, and Adiel's naturalization certificate. They also informed State Department staff that Roee is a U.S. citizen. A State Department employee wrote the word "surrogacy" on the application. The Kivitis were asked to wait while State Department employees—first in a group of three, then more—huddled together to discuss K.R.K.'s passport application. Eventually, a State Department employee informed the Kivitis that the State Department would issue K.R.K. a passport, which would be available for pickup in a few days. The State Department employee then asked Roee and Adiel to take an oath, which they did, and to pay for K.R.K.'s passport in advance, which they also did.

---

[1] Plaintiffs reserve the right to rely on Canadian law as it pertains to K.R.K.'s parentage. To the extent such notice is necessary, this statement constitutes the notice contemplated by Federal Rule of Civil Procedure 44.1.

50.     The next day, Adiel received a telephone call from a State Department attorney who asked for additional information, including specific details regarding the gestational surrogacy arrangement.  Adiel emailed the attorney a copy of the Canadian court order recognizing Adiel and Roee as K.R.K.'s parents.  The attorney subsequently called again to request information concerning Adiel's U.S. residency and informed the Kivitis that the State Department would evaluate K.R.K.'s U.S. citizenship under Section 309, the statutory provision that applies to children born "out of wedlock."

51.     On July 3, 2019, the State Department denied the application for K.R.K.'s passport. The State Department stated in correspondence:

> [T]he Department requires, among other things, evidence that a child's biological U.S. citizen parent was physically present in the United States prior to the child's birth for the requisite period of time specified in the INA.
>
> A review of the evidence you submitted indicates that Adiel Kiviti, [K.R.K.]'s biological parent was not physically present in the United States for the required period of time.  In view of this, [K.R.K.] does not have a claim to U.S. citizenship through Mr. Kiviti.  Nor, in the absence of a biological relationship to Roee Ruttenberg Kiviti, does [K.R.K.] have a claim through him.  Therefore, a U.S. passport cannot be issued at this time and the application is denied.

A true and correct copy of this correspondence is attached as Exhibit A.

52.     As the July 3, 2019 letter makes clear, the State Department evaluated K.R.K.'s citizenship under Section 309, the INA provision applicable only to children born "out of wedlock."  Had the State Department recognized the validity and relevance of Roee and Adiel's marriage, it would have recognized K.R.K. as a marital child and evaluated her citizenship under Section 301(c).  As the letter also makes clear, the State Department deemed Roee not to be K.R.K.'s parent within the meaning of the INA because of the lack of a biological relationship between them.

53.     The State Department's denial of K.R.K.'s passport application was erroneous, violated Plaintiffs' due process and equal protection rights, and was based on an arbitrary, capricious, and legally incorrect reading of the INA.

54.     Roee and Adiel are K.R.K.'s parents in all relevant respects.  Roee and Adiel are K.R.K.'s legal parents, and the parents listed on her birth certificate.  They made the decision to have children together, decided together how they would create their family, and make no distinction in their family life based on which parent has a biological connection to K.R.K. Roee and Adiel are raising their son and daughter together, and both are equally K.R.K.'s fathers.

55.     No other person is K.R.K.'s parent.  No other person has ever acted as a parent to K.R.K. or made a claim to be her parent.  The egg donor is not K.R.K.'s parent, has not claimed to be K.R.K.'s parent, and has never acted as K.R.K.'s parent.  Similarly, the gestational surrogate is not K.R.K.'s parent, has never claimed to be K.R.K.'s parent, and has never acted as K.R.K.'s parent.  Roee and Adiel are K.R.K.'s only parents and have been from the moment of her birth.

56.     The State Department's refusal to recognize K.R.K.'s birth citizenship significantly harms her and her parents.  Defendants have denied K.R.K. the rights and privileges of U.S. citizenship, including the right to permanently reside in the United States, the right to a passport, the protection of the United States government, and the right to run for political office.

57.     Moreover, the State Department has subjected the entire Kiviti family to the indignity and stigma of unequal treatment by the government and to the infringement of their liberty interests in their familial status and their spousal and parent-child relationships. Defendants' refusal to recognize K.R.K.'s U.S. citizenship under Section 301 repeats the discrimination struck down in *Windsor* and *Obergefell* and relegates K.R.K. and other children

like her "through no fault of their own to a more difficult and uncertain family life." *Obergefell*, 135 S. Ct. at 2600.

58.     The State Department's policies and practices of excluding the children of married same-sex parents from the right of birth citizenship set forth in Section 301 are contrary to the INA, are arbitrary and capricious, and violate the statutory and constitutional rights of children and parents.

## COUNT I

### DECLARATION OF CITIZENSHIP UNDER THE INA
### (By Plaintiff K.R.K.)

59.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations of all preceding paragraphs of this Complaint.

60.     Section § 1503(a) of Title 8 empowers this Court to make a *de novo* judgment as to K.R.K.'s citizenship.

61.     Pursuant to Section 301(c) of the INA, K.R.K. is a national and citizen of the United States, and has been since birth, because she is the child of parents who were married to each other at the time of her birth, both of whom are citizens of the United States, and both of whom had a residence in the United States prior to K.R.K.'s birth.

62.     The INA does not require that a child's married parents both have a biological relationship to the child for the child to be deemed born in wedlock for purposes of Section 301.

63.     In contrast, Section 309 of the INA pertains to "Children born out of wedlock," and does require "a blood relationship" between a child and his or her U.S. citizen father to confer citizenship on a child born abroad.

64.     Section 309 of the INA is inapplicable to K.R.K.'s citizenship claim because she was born to married parents and is not a child "born out of wedlock."

65.     Section 301(g) of the INA is inapplicable to K.R.K.'s citizenship claim because, in addition to being the child of married parents, she is not "a person born . . . of parents one of whom is an alien, and the other a citizen of the United States."

66.     K.R.K. therefore seeks a declaration pursuant to 8 U.S.C. § 1503(a) that she is a national and citizen of the United States who acquired citizenship at birth by operation of Section 301(c) of the INA, 8 U.S.C. § 1401(c).

## COUNT II

### VIOLATION OF DUE PROCESS
### (By All Plaintiffs)

67.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations of all preceding paragraphs of this Complaint.

68.     The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving persons of their liberty without due process of law.

69.     Plaintiffs have a protected liberty interest in their family privacy, integrity, and association, including the fundamental right to security in their parent-child bonds.

70.     Plaintiffs Roee Kiviti and Adiel Kiviti's rights of procreation and child rearing are intertwined with their fundamental right to marry.

71.     Roee and Adiel have a protected liberty interest in their parental autonomy, including the fundamental right to make decisions about how to bring children into their family and concerning the care, custody, and control of their child, K.R.K.

72.     In evaluating K.R.K.'s citizenship under Sections 309 and 301(g), not Section 301(c), Defendants unlawfully refused to recognize and give effect to Roee and Adiel's lawful marriage, as well as unlawfully interfered with Roee and Adiel's decisional privacy as it pertains to their right to form a family and parent children.

73.     Defendants' refusal to recognize and give effect to Roee and Adiel's marriage violates their Due Process rights under the Fifth Amendment.

74.     The right to marry is a "central part of the liberty protected by the Due Process Clause," as are the "constellation of benefits" linked to that right, *Obergefell*, 135 S. Ct. at 2600, 2601, including the ability to confer citizenship status on a child born abroad.

75.     Defendants' policies and practices of routinely refusing to recognize and give effect to the marriages of same-sex couples, thereby excluding the children of those same-sex spouses from the scope of Section 301, violate the Fifth Amendment.

76.     Defendants have wrongfully deprived Roee and Adiel of their right to confer citizenship at birth to their children, and deprived K.R.K. of her right to obtain U.S. citizenship at birth under Section 301.  In doing so, Defendants have unconstitutionally infringed on Plaintiffs' protected liberty interests.

77.     There is no rational, legitimate, or substantial government interest served by denying the children of married same-sex couples citizenship at birth.  Nor is there any rational, legitimate, or substantial government interest served by denying U.S. citizens married to same-sex spouses the right to confer citizenship on children born abroad during their marriage.  There is no justification—let alone a compelling one—for denying K.R.K. U.S. citizenship.

78.     As a result of Defendants' discriminatory and unlawful policies and practices, Plaintiffs have suffered injuries to their constitutional rights under the Fifth Amendment and will suffer further irreparable harm if the State Department's policies and practices are not declared unconstitutional and enjoined.

## COUNT III

### VIOLATION OF EQUAL PROTECTION
### (By All Plaintiffs)

79.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations of all preceding paragraphs of this Complaint.

80.     The Due Process Clause of the Fifth Amendment prohibits the federal government from denying persons the equal protection of its laws.

81.     Under Defendants' policy, children born abroad to same-sex couples are routinely deemed to be "born out of wedlock," even if the child's parents are married to each other and are the sole individuals identified as parents on the child's birth certificate.  Defendants' policies and practices discriminatorily refuse to recognize the birthright citizenship of such children under Section 301 and inappropriately subject them to the inapplicable requirements for U.S. citizenship found in Section 309.

82.     The same is not true for the children of different-sex couples.  On information and belief, the children of married different-sex parents are not routinely classified as non-marital children and subjected to the citizenship requirements of Section 309, even when those children are not, in fact, biologically related to both parents.

83.     Defendants' policies and practices are discriminatory and violate Plaintiffs' rights under the Fifth Amendment's guarantee of equal protection by refusing to recognize the legal status of Plaintiffs' family, deeming K.R.K. to be a non-marital child, penalizing K.R.K. and her parents based on the circumstances of her birth, and subjecting each member of the Kiviti family to disparate and disfavored treatment not experienced by similarly situated different-sex couples and their children.

84.     Defendants discriminated against Plaintiffs Roee Kiviti and Adiel Kiviti on the bases of sexual orientation and sex by excluding them from the marital protections of Section 301, which would allow them to confer citizenship status on a child born abroad, and treating them differently from married different-sex couples.  Defendants discriminated against Plaintiffs Roee Kiviti and Adiel Kiviti by subjecting them to different and unfavorable treatment based on their exercise of their fundamental right to marry.

85.     Defendants' denial of citizenship at birth under Section 301 to children like K.R.K. who were born to same-sex spouses discriminates against them because of the circumstances of their birth and because of their parents' sexual orientation, sex, and/or status as a same-sex married couple.

86.     There is no rational, legitimate, substantial, or compelling government interest served by declaring K.R.K. and other children of married same-sex couples to be non-marital children, and denying those children access to citizenship at birth pursuant to Section 301 of the INA.

87.     As a result of Defendants' unconstitutional policies and practices, Plaintiffs have suffered injuries to their constitutional rights under the Fifth Amendment and will suffer further irreparable harm if Defendants' policies and practices are not declared unconstitutional and enjoined.

## COUNT IV

### ADMINISTRATIVE PROCEDURE ACT
### (By All Plaintiffs)

88.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations of all preceding paragraphs of this Complaint.

89.     Plaintiffs have suffered and continued to suffer a "legal wrong because of agency action," 5 U.S.C. § 702, as a result of the State Department's erroneous finding that K.R.K. is not a U.S. citizen and its related decision to deny the passport application submitted on K.R.K.'s behalf.

90.     Under the Administrative Procedure Act, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." 5 U.S.C. § 704.  The reviewing court "shall … hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2).

91.     The Administrative Procedure Act also provides that a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 8 U.S.C. § 706(1).  Relief under Section 706(1) is available where "an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

92.     Plaintiffs have exhausted all required administrative remedies and have no adequate remedy at law.

93.     Defendants' interpretation of Sections 301 and 309, as embodied in the Foreign Affairs Manual, conflicts with the clear language and intent of the INA.  The relevant provisions of the FAM ignore contrary, directly applicable rulings by the Second and Ninth Circuits. Defendants' interpretation of Sections 301 and 309, published without any notice or public comment, is arbitrary, capricious, and not in accordance with the INA.

94.     Defendants' exclusion of K.R.K. and other children born abroad to married same-sex couples from the category of children who qualify for citizenship at birth is arbitrary, lacks a

rational basis, and is contrary to law.  Similarly, Defendants' determination that K.R.K. and other children of married same-sex couples are "born out of wedlock" is arbitrary, lacks a rational basis, and is contrary to law.

95.     Congress has not delegated to Defendants, and Defendants therefore lack, any authority to deny citizenship to K.R.K.

96.     The State Department has acted by unconstitutional regulatory fiat to routinely refuse to recognize the birthright citizenship of the children of married same-sex couples.  This policy illegally excludes those families based on protected personal characteristics.  The State Department has thus stigmatized and denigrated same-sex parents and their children, including Plaintiffs.

97.     No provision of law purports to authorize such authority by the State Department to impinge on Plaintiffs' personal freedoms, nor could any law do so constitutionally.

98.     Plaintiffs have suffered a legal wrong and have been adversely affected and aggrieved by the State Department's arbitrary and capricious conduct, which is contrary to law and in excess of its authority delegated by Congress.  Defendants' agency action must therefore be set aside and permanently enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Issue a judgment declaring that K.R.K. is a national and citizen of the United States who acquired citizenship at birth by operation of Section 301(c) of the Immigration and Nationality Act, 8 U.S.C. § 1401(c);

B.     Order Defendants to immediately issue K.R.K. a U.S. passport;

C.     Issue a judgment declaring the State Department's policy and practice of classifying the children of married same-sex couples as "born out of wedlock" and the State Department's

consequent refusal to recognize K.R.K.'s citizenship status on that basis, unconstitutional and a violation of the INA, both on its face and as applied to Plaintiffs;

       D.      Permanently enjoin Defendants from continuing to classify the children of married same-sex couples as children "born out of wedlock" and denying the children of married same-sex couples the right to acquire citizenship at birth pursuant to Section 301 on that basis;

       E.      Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statutes; and

       F.      Grant such other and further relief as the Court deems equitable and just.

Dated: September 12, 2019

Respectfully submitted,

Karen Loewy*
Omar Gonzalez-Pagan*
**LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.**
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
kloewy@lambdalegal.org
ogonzalez-pagan@lambdalegal.org

Aaron C. Morris*
**IMMIGRATION EQUALITY**
40 Exchange Place, Suite 1300
New York, New York 10005-2744
Telephone: (212) 714-2904
amorris@immigrationequality.org

Jacquelynne M. Hamilton*
**MORGAN LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
jacquelynne.hamilton@morganlewis.com

\* Motions for admission pro hac vice forthcoming

By: s/ Clara Kollm
    Susan Baker Manning*
    Eleanor Pelta*
    Clara Kollm (MD Bar No. 19865)
    **MORGAN LEWIS & BOCKIUS LLP**
    1111 Pennsylvania Avenue, NW
    Washington, DC 20004
    Telephone: (202) 739-3000
    Facsimile: (202) 739-3001
    susan.manning@morganlewis.com
    eleanor.pelta@morganlewis.com
    clara.kollm@morganlewis.com

    John A. Polito*
    Christie P. Bahna*
    Joshua Rapoport *
    **MORGAN LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
    San Francisco, California 94105
    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001
    john.polito@morganlewis.com
    christie.bahana@morganlewis.com
    josh.rapoport@morganlewis.com

    *Attorneys for Plaintiffs*